UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNATHAN DUNN,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SIMMONS, et al.,<br><br>Defendants. | Case No. 3:16-cv-00016<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Newbern |

To: The Honorable Aleta A. Trauger, District Judge

**REPORT AND RECOMMENDATION**

This matter has been referred to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B). (Doc. No. 18.)

Now pending before the Court is a motion to dismiss or for summary judgment filed by Defendants Jeffrey Baker, Tammy Jones, Yolanda McQuiddy-Estes, Michael Robertson, Charles Simmons, Warden Bruce Westbrooks, and Jason Woodall. (Doc. No. 117.) Plaintiff Johnathan Dunn has responded in opposition. (Doc. Nos. 121, 122.) For the following reasons, the Magistrate Judge RECOMMENDS that Defendants' motion be GRANTED and that this action be DISMISSED for lack of subject matter jurisdiction.

I. Background

A. Factual History

The claims made in this action arise from Plaintiff Johnathan Dunn's time in custody at the Lois M. DeBerry Special Needs Facility (DeBerry), where he was incarcerated until he was transferred to the Morgan County Correctional Complex (MCCC) on May 13, 2016. (Doc. No. 63;

Doc. No. 118-1, PageID# 834; Doc. No. 119, PageID# 838, ¶ 2.) Dunn filed this lawsuit pro se under 42 U.S.C. § 1983 on January 8, 2016, against Defendants Tammy Jones, Sherri Duckett-Gregory,[1] Charles Simmons, Jason Woodall, Steven Nixon, Bruce Westbrooks, Yolanda McQuiddy-Estes, Michael Robertson, Jeffery Baker, Jane Doe, and John Doe. (Doc. No. 1, PageID# 1–4.) With the exception of Woodall, who is the Deputy Commissioner of the Tennessee Department of Corrections, all of the Defendants are officers at the DeBerry facility. (*Id.*) Dunn has sued the defendants in both their individual and official capacities and alleges that they violated his rights under the First, Fifth, and Fourteenth Amendments. (*Id.* at PageID# 1–11.) Dunn is proceeding in forma pauperis. (Doc. No. 18.) He advances four claims in this lawsuit. (Doc. No. 1, PageID# 1–11.)

First, Dunn challenges the implementation of a DeBerry policy that bans certain magazines "due to their explicit nature and content." (*Id.* at PageID# 6.) The policy, announced in a March 10, 2015 memo issued by Associate Warden of Security Charles Simmons and allegedly approved by Warden Nixon, banned the following magazines: "Straight Stuntin, Sweets, Iadore, Girls of the World, Wet & Wild, American Curves, King, Show, and Corner Stone." (*Id.* at PageID# 6, 18.) Dunn claims that Victoria's Secret "magazines" were also banned, which caused one such "magazine" that had been mailed to him to be "intercepted by Deberry special needs mail room staff" and ultimately rejected. (*Id.* at PageID# 6–7.) Dunn alleges that the ban was put in place "solely because the publication content is sexual and repugnant" and that it is not "rationally related to [a] legitimate penological interest in promoting security, preventing sexual ass[au]lts,

---

[1] In his original complaint, Dunn refers to Duckett-Gregory as Duckett-Gibson. (Doc. No. 1, PageID# 2.) After Dunn filed his "Notice to the Court[] Names of Un[known] Defendants" and the Defendants filed their Answer, misnamed and "unknown" defendants were corrected on the docket. (Doc. Nos. 17, 35.)

and furthering rehabilit[at]ions." (*Id.* at PageID# 7.) Further, Dunn states that he is an author of "urban books" featuring stories with "sexual detail" and that the ban interferes with that vocation. (*Id.* at PageID# 8.) Dunn seeks "the cost of [the magazines rejected] by the defendants" and "an order that the defendants cease such acts and lift all bans on the above style magazines . . . ." (*Id.* at PageID# 15.)

Dunn challenges a second DeBerry policy, introduced by "Bruce Westbrooks and associate warden Charles Simm[]ons" in a December 3, 2014 memo, that bans "stamps coming in thr[ough] the mail from any form of outside source." (*Id.* at PageID# 8.) "[That] policy was put in place due to the risks posed by postage stamps," which, Dunn states, include drug trafficking and gambling. (Doc. No. 119, PageID# 838–39, ¶¶ 2, 6, 7.) Dunn claims that the policy violates his "first amendment right to communicate by mail," interferes with his ability to "receive [] a Jpay (money from family)," and forces him, "as well as other prisoners[,] to choose between hygienic supplies [and] postage." (Doc. No. 1, PageID# 9.) Dunn seeks "all injunctive and equitable relief to which [he] may be entitled, including an order [that] the Defendants cease such acts and . . . provide a documented [list] of ready alternatives and/or lift [all such] bans on . . . stamps being received thr[ough] the mail . . . ." (*Id.* at PageID# 15–16.)

Dunn also takes issue with DeBerry's rules governing access to legal research. Dunn claims that, "[i]n accordance with [DeBerry](TDOC) policy . . . [,] enforced by [Correctional Officer Jones] and approved by Warden Nixon, Associat[e] Warden Charles Simm[]ons, and Warden Bruce Westbrooks," "the law library does not provide any [] type of legal books to inmates . . . housed in the sheltered living (mental health program) or the seg unit," nor "does it provide a [usable] west law computer in [those] pods." (*Id.* at PageID# 9–10.) Further, Dunn alleges that, in order to get "case law[] or reference rules . . . out of the law books," he has to give a "specific

3

statement of [what] [he is] looking for," otherwise his document request will be rejected as "to[o] vague." (*Id.* at PageID# 10.) This policy hinders Dunn from filing "responsive pleadings" in "ongoing civil and criminal cases" and interferes with his "right to represent [himself]," thereby violating the "first amendment['s] petition clause, [the] fifth amendment['s] due process clause . . . [and] the fourteenth amendment['s] equal protection and due process clauses." (*Id.* at PageID# 10–11.) Dunn seeks "all injunctive and equitable relief to which [he] may be entitled, including an order that the Defendants immediately . . . provide adequate and unlimited access to . . . law books, case research [etc.,] and [that] such be provided to inmates in segregation and all inmates like [him]." (*Id.* at PageID# 16.)

Finally, Dunn alleges that "Defendants [Simmons, Nixon, Westbrooks, Duckett-Gregory, and Woodall] violated [his] first and fourteenth amendment rights by not properly . . . reviewing [his] grievances . . . ." (*Id.* at PageID# 11.) Dunn seeks an order requiring Defendants to "cease such acts . . . [and] provide a documented plan of ways to enforce [an unbiased] [g]rievance procedure." (*Id.* at PageID# 15.) In addition to the specific relief that Dunn requests in connection with each of the four claims he advances in this lawsuit, Dunn seeks a declaration "that the acts, policies, [and] practices of the Defendants violate [his] constitutional rights and federal law." (*Id.* at PageID# 15.)

### B. Procedural History

Defendants Baker, Jones, McQuiddy-Estes, Robertson, Simmons, Westbrooks, and Woodall filed a motion to dismiss or for summary judgment (Doc. No. 117), accompanied by a supporting memorandum (Doc. No. 118), a statement of undisputed material facts (Doc. No. 119),

4

and the affidavits of Simmons and Ruby Ogburn (Doc. Nos. 118-1, 120).[2] Defendants argue that Dunn's transfer to MCCC deprives this case of "its character as a present, live controversy and [Dunn's] entire lawsuit is now moot." (Doc. No. 118, PageID# 816–17.) That is because Dunn "seeks only injunctive relief," the focus of which is the "alleged conditions of his confinement at [DeBerry]," not at MCCC. (*Id.* at PageID# 816.) Alternatively, Defendants argue that none of Dunn's claims has merit. (*Id.* at PageID# 817–28.)

Dunn responded in opposition to Defendants' motion, filing a statement of disputed factual issues and a declaration. (Doc. Nos. 121, 122.) In those filings, Dunn does not rebut Defendants' mootness argument and instead insists that "there are genuine issues of material[] fact to be resolved" in each of his claims. (Doc. No. 122.) It appears that Dunn is no longer incarcerated. The Court's docket reflects that, on November 30, 2017, Dunn called the Court to change his mailing address to a residence.

## II. Legal Standard

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. (Doc. No. 117, PageID# 812; Doc. No. 118, PageID# 815–16.) Because

---

[2] Not all of the Defendants originally named in Dunn's complaint are still active in this action. As the Court has previously noted, no document filed by either party since Dunn initiated this lawsuit "refers to the 'Does' named in the original pleading." (Doc. No. 105, PageID# 743 n.1.) Further, the Court granted in part the first motion for summary judgment of Defendants Baker, Duckett-Gregory, Jones, McQuiddy-Estes, Robertson, Simmons, Westbrook, and Woodall (Doc. No. 78), dismissing the claim Dunn had brought against Duckett-Gregory based on her failure to adequately respond to his grievances but rejecting Defendants' argument that Dunn's claims should be dismissed on account of his failure to properly exhaust DeBerry's administrative remedies as required by the Prison Litigation Reform Act. (Doc. No. 105, PageID# 747–50.) Finally, Defendant Steven Nixon has "never filed an answer or any other responsive pleading in this action," (Doc. No. 105, PageID# 743 n.2) although counsel for the other Defendants has raised the question of whether Nixon was properly served and suggested that Nixon was not employed at DeBerry during the time frame relevant to Dunn's claims. (Doc. No. 103.)

5

dismissal under 12(b)(6) and summary judgment represent "decision[s] on the merits, 'which courts may render only after jurisdiction has been established,'" the Court will construe Defendants' argument that Dunn's lawsuit is moot as a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). *Upper Peninsula Power Co. v. Sliger*, No. 2:11-cv-90, 2011 WL 2634156, at *1 (W.D. Mich. July 5, 2011) (quoting *Korkham v. Societe Air France*, 429 F.3d 288, 294 (D.C. Cir. 2005)); *see also Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987) (explaining that "a party may move to dismiss for lack of subject matter jurisdiction only under Rule 12(b)(1)"). Federal courts also have "an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's constitutional or statutory power to hear the case before it. Fed. R. Civ. P. 12(b)(1); *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 851 (W.D. Ky. 2007). Rule 12(b)(1) motions to dismiss fall into two categories: facial attacks and factual attacks. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). A facial attack is a challenge to the sufficiency of the pleading itself, requiring the Court to take the allegations as true. *Id.* A factual attack "raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist.'" *Id.* at 817 (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.

1990). In either type of challenge, the plaintiff bears the burden of proving that jurisdiction exists. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Mooneyham v. Equifax Info. Servs., LLC*, 99 F. Supp. 3d 720, 722 (W.D. Ky. 2015) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

**III.     Analysis**

Because this lawsuit no longer presents a live case or controversy, it must be dismissed for lack of subject matter jurisdiction. Dunn has requested injunctive and declaratory relief with respect to Defendants who are no longer in a position to do him harm, as Dunn was transferred from DeBerry to MCCC and, now, appears to be out of custody entirely. Dunn's claims for equitable relief are therefore moot. Although Dunn does seek compensatory damages in the amount of the cost of the Victoria's Secret catalog that was confiscated, he does not have standing to bring that claim.

**A.  Dunn's Claims for Equitable Relief**

Article III, section 2 of the United States Constitution restricts the subject matter jurisdiction of federal courts to cases or controversies. "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). When a plaintiff's grievances are "no longer likely to be redressed by a favorable judicial decision," the lawsuit becomes moot and must be dismissed. *Id.*; *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("The rule that this Court lacks jurisdiction to consider the merits of a moot case is a branch of the constitutional command that the judicial power extends only to cases or controversies").

In the prison context, a case will cease to be justiciable when a prisoner has only brought "claims for declaratory or injunctive relief [that] relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated." *Jordan v. Sosa*, 654 F.3d 1012, 1027 (6th Cir. 2011) (collecting cases). The Sixth Circuit has held that a prison transfer moots a prisoner's claim for injunctive relief unless the harm that the requested injunction sought to redress "travel[s] with him" to the new prison. *Colvin v. Caruso*, 605 F.3d 282, 295–96 (6th Cir. 2010). If it does not, any entry of equitable relief in favor of the prisoner at that point "would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him." *Id.* (quoting *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997)).

Defendants argue that Dunn's transfer to MCCC moots his entire lawsuit because he seeks only injunctive relief that is specific to his incarceration at DeBerry. (Doc. No. 118, PageID# 816–17.) Dunn seeks several types of injunctive relief. He seeks a general injunction "requiring Defendants, their agents, subordinates, employees, and all others acting in concert with them to cease their unconstitutional and unlawful practices and to remedy their violations of the constitution and the law." (Doc. No. 1, PageID# 15.) He also seeks injunctive relief that is specific to each of his claims: (1) "an order that the [D]efendants . . . provide a documented plan of ways to enforce [an unbiased grievance procedure];" (2) an order requiring the Defendants to "lift all bans" on prohibited magazines and improve their "censorship policies and procedures;" (3) an order mandating that Defendants lift the ban on "stamps being received thr[ough] the mail;" and (4) an order requiring Defendants to "immediately arrange" for Dunn to have "adequate and unlimited access to [] law books, case research, [etc.]" (*Id.* at PageID# 15–16.)

Regardless of whether Dunn has been transferred to MCCC or released, these claims for injunctive relief are now moot. S*ee Putnam v. Montgomery Cty. Sheriff's Dep't*, No. 3:12-0132, 2012 WL 6645314, at *5 (M.D. Tenn. Dec. 20, 2012) ("If Plaintiff Morrow is, in fact, no longer confined at the Jail because he has either been released or permanently transferred to another correctional facility, this fact would likewise render [his request for a return to a prior policy of the Jail] moot as to him"). If Dunn is no longer incarcerated, his claims seeking to alter the conditions at DeBerry could not have "traveled with him." *Colvin*, 605 F.3d at 296. But even if Dunn is still incarcerated, he has offered no reason to believe that any of the policies or practices that he has challenged in this lawsuit are present at MCCC; in fact, Dunn has not responded at all to Defendants' argument that his transfer mooted his claims for injunctive relief. (*See* Doc. Nos. 121, 122.) Further, nothing in the record establishes that the challenged policies are in effect at MCCC. Both the magazine ban and the stamp ban were announced in "memos" issued by DeBerry officials, and Dunn's access to court and grievance procedure claims are specific to conditions at DeBerry. (Doc. No. 1, PageID# 6–16, 18.) Nothing in the record indicates that Dunn's claims for injunctive relief remain viable. *See Rogers*, 798 F.2d at 914.

Dunn's claim for declaratory relief, though not acknowledged by Defendants (Doc. No. 118, PageID# 816), suffers the same fate. Dunn asks the Court to "declare that the acts[,] policies, [and] practices of the Defendants violate [his] constitutional rights and federal law." (Doc. No. 1, PageID# 15.) Although "[t]he mootness of a plaintiff's claim for *injunctive relief* is not necessarily dispositive regarding the mootness of his claim for a *declaratory judgment*," *Jordan*, 654 F.3d at 1025 (emphasis in original), in this case, Dunn's claims for injunctive and declaratory relief are moot for the same reason: granting them would not "affect[] the behavior of the defendant[s] toward [Dunn]." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).

9

Dunn's claims concern policies and practices that are specific to DeBerry. Because Dunn is no longer incarcerated at DeBerry, any declaration concerning the status of his rights during the time he was incarcerated there would not alter the behavior of the Defendants towards him now. None of the Defendants who work at DeBerry are likely to interact with Dunn in the future, and Dunn's claim against Woodall (the only Defendant who does not work at DeBerry) is based solely on his failure to properly review DeBerry officer Duckett-Gregory's denials of Dunn's grievances. (Doc. No. 1, PageID# 11–12.) Thus, even if Dunn is still incarcerated at MCCC, there is no indication that a declaration concerning Woodall's reviews of DeBerry grievances would affect Woodall's behavior vis-à-vis MCCC employees. That is especially so given that Dunn has not alleged that Woodall reviews MCCC grievances or that Dunn continued to file grievances once he was transferred to MCCC.

### B. Dunn's Claim for Compensatory Damages

Unlike mootness, which addresses on a party's capacity to maintain a lawsuit as the circumstances of the litigation evolve, the doctrine of standing asks whether a party has the "capacity to bring a lawsuit at the time the complaint is filed." *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 460 (6th Cir. 2007). "To meet the 'irreducible minimum' requirements of constitutional standing," Dunn must demonstrate: (1) that he "suffered an injury in fact;" (2) that his injury can be "fairly traced to the challenged conduct of [Defendants];" and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 461 (6th Cir. 2007) (internal quotations omitted).

In his prayer for relief, Dunn requests "the cost of [magazines rejected] by the defendants."[3] (Doc. No. 1, PageID# 15.) Yet the only such rejection that Dunn mentions in his complaint is the August 27, 2015 confiscation of a Victoria's Secret "magazine" that was mailed to him. (*Id.* at PageID# 7.) Dunn claims that the "magazine" was rejected as a result of the March 10, 2015 ban on certain publications. (*Id.* at PageID# 6, 18.) Dunn asserts that the ban "violates [his] as well as other prisoners freedom of speech . . . ."[4] (*Id.* at PageID# 8.)

Defendants argue that Dunn's injury—the confiscation of the Victoria's Secret magazine—is not fairly traceable to the ban he challenges. Pointing to the copy of the ban that Dunn attached to his complaint, Defendants observe that Victoria's Secret is "not on the list of prohibited publications." (Doc. No. 118, PageID# 819 n.3.) Defendants state that, therefore, Dunn "suffered no adverse effect as a result of the policy" and therefore "lacks standing to bring a claim based on [it]." (Doc. No. 117, PageID# 813.) Dunn does not respond to this argument, (Doc. Nos. 121, 122) but, in his complaint, he insists that Victoria's Secret was one of the banned publications. (Doc. No. 1, PageID# 6.)

---

[3] Dunn moved to amend his complaint to add a request for $50,000 in punitive damages, but the Court denied that motion because Dunn had not alleged that Defendants were reckless or callously indifferent to his rights. (Doc. No. 102, PageID# 734–35.)

[4] To the extent that Dunn's reference to the rights of "other prisoners" reflects an effort to bring a challenge to the magazine ban on their behalf, that effort fails. (Doc. No. 1, PageID# 8.) In general, the Court's jurisdiction "can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Warth v. Seldin*, 422 U.S. 490, 499 (1975). However, individuals have been allowed to pursue claims on behalf of others when two conditions are met: (1) "the party asserting the right [must have] a 'close' relationship with the person who possesses the right . . ." and (2) there must not be a "'hindrance' to the possessor's ability to protect his own interests." *Boland v. Holder*, 682 F.3d 531, 536 (2012) (internal quotations omitted). Dunn has shown neither that he has a close relationship with the unnamed "other prisoners," nor that any of those prisoners are unable to bring claims on their own. He therefore does not have standing to bring claims on their behalf.

Regardless, any dispute about whether the confiscation is fairly traceable to the ban is irrelevant because Dunn has made no showing that the confiscation caused him a monetary injury that an award of compensatory damages might redress. Dunn does not allege that he paid for the Victoria's Secret "magazine" that was mailed to him, and, in requesting "the cost" of the rejected "magazine," he does not specify an amount. (Doc. No. 1, PageID# 6–8, 15.) This is likely because the Victoria's Secret catalog (Victoria's Secret has never published a "magazine") was free for subscribers until May 2016 (five months after Dunn filed the complaint in this lawsuit) when the company discontinued it.[5] *See* Kristina Monllos, *Why Victoria's Secret Won't Be Mailing Out Any More Catalogs*, Adweek (May 24, 2016), https://www.adweek.com/brand-marketing/why-victorias-secret-wont-be-mailing-out-any-more-catalogs-171661/; Victoria's Secret, *Do You Mail Catalogs?* https://customerservice.victoriassecret.com/app/answers/detail/a_id/24/~/do-you-mail-catalogs%3F (last visited June 13, 2018) (explaining that the company does not "have plans to print or mail catalogs in the near future"). Thus, any "cost" associated with the confiscated Victoria's Secret catalog did not fall to Dunn. Dunn alleges no financial injury that would justify the compensatory damages claim he has raised in this lawsuit. Although Dunn alleges that DeBerry's ban also caused him non-monetary injuries—by interfering with his ability to pursue his work as an author of urban books containing sexually detailed stories—the relief Dunn has requested in connection with those injuries is equitable in nature and is moot for the reasons

---

[5] The Court may take judicial notice of the developments that led to the cancellation of the Victoria's Secret catalogue, as presented in the cited articles and webpage. *See* Fed. R. Evid. 201 (explaining that the Court can judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

discussed above. (*See* Doc. No. 1, PageID# 8.) Because there is no live claim in this lawsuit, it must be dismissed for lack of subject matter jurisdiction.[6]

## IV. Recommendation

In light of the foregoing, the Magistrate Judge RECOMMENDS that Defendants motion to dismiss or for summary judgment be DENIED AS MOOT and that this case be DISMISSED for lack of subject matter jurisdiction.

Any party has fourteen days after being served with this report and recommendation in which to file any written objections to it. A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of further appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered this 20th day of August, 2018.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[6] Neither Defendant Nixon's failure to appear in this litigation, nor the fact that Dunn seeks "the cost and disbursements of this action, including attor[ney's] fees, cost[s], and expenses" affects this conclusion. (*Id.* at PageID# 16.) Those of Dunn's claims for equitable relief that are directed at Nixon are moot for the reasons offered with respect to the other Defendants. And Dunn would not be entitled to attorney's fees even if his claims were live and meritorious because he is not represented by a lawyer. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) ("The Circuits are in agreement, however, on the proposition that a pro se litigant who is not a lawyer is not entitled to attorney's fees. Petitioner does not disagree with these cases, and we are also satisfied that they were correctly decided.").